**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Russell Lamar DAVIS,**
**Defendant-Appellant.**

No. 74–2577.

United States Court of Appeals,
Fifth Circuit.

May 23, 1975.

Rehearing and Rehearing En Banc
Denied Sept. 29, 1975.

C. R. Laurendine, Mobile, Ala. (Court-appointed), for defendant-appellant.

C. S. White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GOLDBERG and RONEY, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge:

The appellant, Russell Lamar Davis, was indicted for kidnapping a sixteen year old girl in Bay St. Louis, Mississippi, and transporting her in interstate commerce to Mobile, Alabama, in violation of 18 U.S.C. § 1201.[1] He pleaded not guilty by reason of insanity. The jury resolved the issue against him in its verdict of guilty. He was sentenced to life imprisonment.

Appellant insists that the court erred: (1) in directing a second medical examination to determine his sanity at the time of the offense and his capacity to stand trial; (2) in not admitting in evidence a state court sentence where he pleaded not guilty by reason of insanity, and was committed to a mental hospital; (3) in not admitting in evidence the trial court's order first entered in respect to his competency; (4) in improperly limiting the cross-examination of a Government expert witness; and (5) in the admission of evidence of prior criminal acts. He also claims that there was a failure to prove beyond a reasonable doubt his sanity; and finally, that he was improperly denied bail.

We find no error and therefore affirm.

The record reveals the following facts: Late in the afternoon of November 21, 1972, the victim drove her parents' car to her aunt's home in a sparsely settled area on Melody Lane in Bay St. Louis to pick up some things she had left after cleaning the house earlier in the day. She drove half way up the driveway, stopped, got out of the car, and for the first time saw appellant leaning on a mail box at the end of the driveway. He approached and asked her for directions to the bus station. Given the direction he observed that it was too far to walk. He then inquired as to taxi service. Upon receiving negative information he requested the victim to call the police because they would give him a ride. The victim entered the house, picked up the phone and turned to find the appellant putting a pair of scissors to her neck. He demanded the car keys and took them from her purse. He then tore up a bed sheet, bound her hands behind her back and gagged her, forced her into the trunk of the car, and drove east on U.S. Highway 90. Some two

---

1. With an exception not here applicable the section provides for punishment of any person who "knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise . . . ."

hours later he entered a wooded area, parked, removed the victim from the trunk and raped her. Following which, he placed her in the front seat and drove to Mobile. There he entered a filling station for gas. As he left he noticed a police car in the vicinity, whereupon he drove the car to an abandoned shed, and forced the victim to get back into the trunk.

An attendant at the station recognized appellant, and observing the girl's frightened appearance, took the license number, and alerted the police. When appellant heard the police siren, he started to speed up, but thought better, and pulled into the driveway of an apartment, stopped the car and fled, hiding under the apartment. He was removed after much effort. Other officers removed the screaming victim from the trunk.

■ There was no error in directing a second medical examination to determine appellant's sanity at the time of the offense and his capacity to stand trial. Under the circumstances the court's action was within its sound discretion, Birdsell v. United States, 5 Cir., 346 F.2d 775, and its action will not be upset unless there is an abuse of that discretion. United States v. Cook, 9 Cir., 418 F.2d 321. The court's action was prudent and judicious and in no respect erroneous.

■ Nor do we find error in the action of the court in not admitting into evidence its first order finding that the appellant was incompetent to stand trial. An attempt to get a like finding before the jury failed in United States v. Collins, 5 Cir., 491 F.2d 1050.[2]

■ Appellant fares no better with his claim that the court erred in not admitting in evidence a state court judgment wherein the prosecuting attorney confessed his plea of not guilty by reason of insanity following which the court found him not guilty for that reason and committed him to a state mental hospital. Appellant was indicted for the crime of burglary committed on March 7, 1970. The judgment referred to was entered on May 24, 1973. The facts here presented do not bring this case within the reach of United States v. Minor, 5 Cir., 459 F.2d 103, where the rejected evidence was "the certified record of the civil adjudication by a state court of plaintiff as an incompetent." The trial court correctly rejected the offer.

■ In ascertaining an accused's mental capacity, evidence is admissible with respect to the condition of his mind, both as to sanity and insanity, provided the conduct is shown to be within a reasonable time before and after the commission of the crime with which he is charged. Breland v. United States, 5 Cir., 372 F.2d 629, 633. Within this rule, evidence of prior criminal conduct may under proper circumstances and with proper limitation and admonition be received on the issue of mental capacity. See Davis v. United States, 5 Cir., 413 F.2d 1226, 1230.

■ Evidence was received as to an arrest of the appellant in New Orleans in September in which he used an alias. The same alias was employed on the day of the crime here involved when he registered at a hotel in that city. He robbed the hotel and fled with the manager's car and shotgun. Later in the day he drove the car into the rear of a car in Bay St. Louis. He left the scene of the accident with the stated purpose of contacting the highway patrol, but did not return. He went into a secluded wooded area to rape his victim.

Appellee contends that appellant's conduct on all these occasions evidenced a well organized, goal directed individual; that his acts, including his attempt to conceal his identity, to cover the course of his conduct, and to facilitate his escape, indicated no lack of coordination or reasoning, nor acts of a person acting out of impulse, but clearly indicated that he was acting according to design and plan, wholly consistent with the acts of a sane person and equally inconsistent with one afflicted with a mental disease.

The evidence as to such other conduct was properly submitted to the jury. The

---

**2.** Likewise a finding that the accused is mentally competent to stand trial may not be admitted. United States v. Moudy, 5 Cir., 462 F.2d 694, 18 U.S.C. § 4244.

court having been forewarned, in camera, of the nature of the evidence gave an advance[3] as well as a final instruction[4] carefully admonishing the jury as to the weight to be given to the evidence and clearly limiting the effect of such evidence to the issue of sanity.

■ There was no abuse of discretion by the trial court in limiting the cross-examination of Dr. Nicholas Godfroy when he was asked the question if he was leaving the employment of the Justice Department. Upon inquiry as to the relevancy of the question, counsel for appellant replied that he had been informed that Dr. Godfroy was leaving the Department because of his inability to agree with other psychiatrists there, and added "my source is not the most responsible in the world."

■ When raised as a defense in a criminal case the issue of the defendant's sanity is for the jury, to be determined from all the evidence. United States v. Collins, *supra*; United States v. Harper, 5 Cir., 450 F.2d 1032. The court properly submitted that issue to the jury.

The assignment as to the denial of bail is without merit.

The action of the trial court is affirmed.

Affirmed.

GOLDBERG, Circuit Judge (dissenting):

I respectfully dissent from the disposition of this case for one reason. I believe that our decision is controlled by this Court's opinion in United States v. Minor, 5 Cir. 1972, 459 F.2d 103.

In *Minor*, also a federal criminal prosecution, the district court refused to admit the "certified record of the civil adjudication by a state court of plaintiff as an incompetent." On appeal, we held that the refusal to admit the Florida judgment was error, because it was relevant to the issue being tried in federal court—Minor's defense of insanity—and its weight was for the jury. Moreover, we held that the error was not harmless because "[t]he evidence in question was both pertinent and powerful when compared to oral testimony." In the present

**3.** "The Government will seek to introduce evidence, as has been outlined to you, of other and different occasions on which the Defendant may have followed a course of conduct which would indicate his mental capacity. That is, his insanity. This involves acts which might or might not constitute other crimes or criminal conduct. I want you to understand and to be clear in your mind that we are not here concerned with any other possible crime that this Defendant may or may not have committed. We are here concerned only with whether or not the Defendant is guilty of the crime charged in the indictment, and whether or not at the time of the commission of that act he had the capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law. Testimony of other acts or crimes [will] not [be] offered for the purpose of proving that he did the crime with which he is here charged, and you must be careful in considering this testimony not to allow it to influence you or to inflame you against the Defendant because of the fact that he may have engaged in such conduct. But it can be considered by you for purposes of showing his capacity at the time of the commission of the crime charged in this indictment, that is whether or not he had the substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

**4.** "The Government introduced evidence in this case that on other and difference occasions the Defendant followed a course of conduct which is indicative of his mental capacity, that is, on the issue of his sanity. This involved acts which might or might not constitute criminal conduct by this Defendant on those occasions. And as I say, we are not here concerned with whether or not he may have committed other crimes or possibly pursued a course of conduct that might have been criminally oriented. We are here concerned only with whether or not the Defendant is guilty of the crime charged in the indictment . . . And the testimony of other acts or crimes was not offered in the case for the purpose of proving that he committed the crime here charged, that is, kidnapping, and you must be careful in considering this other evidence not to allow it to inflame you or influence you against the Defendant because of the fact that he may have been engaged in such conduct. But it can be considered by you only for the purpose of showing his capacity at the time of the commission of the crime charged in the indictment, and that is whether or not it would indicate to you either he did or did not have substantial capacity either to appreciate the wrongfulness of his conduct at that time or to conform his conduct to the requirements of the law."

case, the federal district court refused to admit evidence of a state court adjudication that defendant was not guilty of a state crime because of insanity. Here, however, my brethren have held that the refusal to admit the prior adjudication was not reversible error. I believe that neither of the possible bases upon which the majority may have reached its decision distinguish the credibility of the state adjudication here from that in Minor.

First, the majority assumes that Minor's adjudication of incompetency followed adversarial process while here the state judgment came after the prosecutor confessed a plea of not guilty by reason of insanity. There is no significance in this distinction. The credibility of the state court judgment cannot depend on whether it was confessed or adversarial, for the law gives equal weight to both types of judgment. Moreover, the fact that the state prosecutor did not contend that Davis was sane cuts in favor of the reliability of the finding. It indicates that the prosecutor thought that the evidence of insanity was clear enough so as not to be worth investing his time and resources in litigation of the issue.

Second, while in *Minor* the state adjudication established civil incompetency, here the evidence of insanity stems from an acquittal on a criminal charge. But, the insanity acquittal here is no less probative of the mental condition of the defendant at the time of the state adjudication than was the finding of incompetency by the state court in *Minor*. Alabama, which tried Davis, has put the burden of proving the affirmative defense on insanity squarely on the defendant. Code of Ala., tit. 15, § 422 reads: "Every person over fourteen years of age charged with crime is presumed to be responsible for his acts, and the burden of proving that he is irresponsible is cast upon the accused. The defense of insanity in all criminal prosecutions shall be clearly proved to the reasonable satisfaction of the jury." Minor was evidently civilly committed pursuant to Fla. Stat.Ann. tit. 27, § 394.22 (repealed eff.

July 1, 1972) (now Fla.Stat.Ann. tit. 27, § 394.467) under which there was a legal presumption of sanity. Campbell v. Stoner, Fla.1971, 249 So.2d 474. The state adjudication in Minor thus showed that it was more likely than not that Minor was incompetent.

The burden of proving insanity is about the same for a Florida civil adjudication and an Alabama criminal defense. In each case the proponent of insanity is required to carry the burden and prove his case by a preponderance of the evidence. If they differ at all, the Alabama criminal procedure places a *greater* duty on defendant with its "clearly proved to the reasonable satisfaction" standard.

I am convinced that we cannot make any legally cognizable distinction between the probative value of the adjudication of insanity in the state court in this case and that in the state court in *Minor*. I think the majority here makes the legendary "distinction without a difference".