408 So.2d 813 (1982)
Clinton JOHNSON a/k/a Willie James, Appellant,
v.
The STATE of Florida, Appellee.
No. 80-1311.
District Court of Appeal of Florida, Third District.
January 19, 1982.
*814 Bennett H. Brummer, Public Defender and James V. Johnstone, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
BASKIN, Judge.
We have reviewed defendant's conviction for second-degree murder and sentence of life imprisonment, and we are unable to find support in the record for his contention that he was deprived of a speedy trial. Notably absent from the record is a motion for discharge. Fla.R.Crim.P. 3.191(a)(1). We deem it necessary, however, to reverse the conviction and sentence *815 because we observe error in the trial court's exclusion of Dr. Loeffler's expert testimony in support of his opinion that defendant Johnson was legally insane at the time he committed the crime charged.
In furtherance of an insanity defense, defense counsel inquired of psychologist Dr. Loeffler:
Q. The incident took place on July 16.[[1]] Could you render an opinion as to his mental state on July 16?
A. Yes, I can.
Q. What would that opinion be?
A. My opinion would be that at the time he did not know right from wrong. He did not know the nature and consequences of his behavior.
...
Q. In your opinion, within reasonable professional certainty, would Clinton Johnson be able to distinguish right from wrong on the date of July 16, and was he able to know the nature and consequences of his act?
A. No, my opinion is that he could not distinguish right from wrong and did not know the nature and consequences of his actions.
At the conclusion of all testimony, the state sought to exclude Dr. Loeffler's testimony on the ground that counsel's inquiry concerning July 16th rendered Dr. Loeffler's responses irrelevant to the issue of whether defendant was insane on the date of the crime, July 19th. The court was unsure of its recollection and asked the court reporter to read back the testimony. The court reporter reread portions of the testimony containing the incorrect date; the court then agreed with the state and excluded Dr. Loeffler's testimony as irrelevant to prove defendant's insanity on the date of the offense. However, the reporter failed to read:
Q. In your opinion  your professional opinion, was he insane at the time of the crime?
A. In terms of the M'Naughten rule, I would say he was insane at the time of the alleged offense.
In our opinion, the exclusion of Dr. Loeffler's testimony deprived defendant Johnson of a fair trial and of his constitutional right to present witnesses in his behalf. See Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1820, 18 L.Ed.2d 1019 (1967). To establish insanity, defendant was required to prove that he was insane at the time of the offense. Chatman v. State,[2] 199 So.2d 475 (Fla. 1967); Blatch v. State, 216 So.2d 261 (Fla.3d DCA 1968), cert. dismissed, 225 So.2d 532 (Fla. 1969). The exclusion may not be considered harmless error, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), despite the presence of other medical testimony that defendant Johnson was insane, cf. United States v. Minor, 459 F.2d 103 (5th Cir.1972) (exclusion of record of state court adjudication of incompetency not harmless error where accused raised insanity defense, although lay witnesses testified that defendant had been adjudged incompetent), because the law placed the burden of proof on defendant Johnson while the court's action curtailed his opportunity to meet that burden.
Constitutional error may not be deemed harmless if a reasonable possibility exists that the error may have contributed to the conviction or that the error may not be found harmless beyond a reasonable doubt. Nowlin v. State, 346 So.2d 1020 (Fla. 1977), citing Chapman v. California, supra; see § 924.33, Fla. Stat. (1979).
*816 Our decision to reverse defendant's conviction renders it unnecessary for us to review the propriety of the state's comment during closing argument that it was "unheard of" for a person to spend more than two years in the state hospital system if found insane. We agree that so prejudicial a comment should not have been made to the jury. Evalt v. United States, 359 F.2d 534 (9th Cir.1966); Williams v. State, 68 So.2d 583 (Fla. 1953). We need not reach defendant's remaining contentions.
Reversed and remanded for a new trial.
DANIEL S. PEARSON, Judge, concurring specially.
I am not content to rest the decision in this case on the singular fact that the transcript reflects that Dr. Loeffler intoned the magic words that the defendant was insane "at the time of the alleged offense."
First, if Loeffler's testimony had only been that the defendant was insane on July 16, three days before the alleged offense, such testimony would certainly have been relevant, and, it follows, clearly admissible, to prove that the defendant was insane on July 19. While the issue to be decided was insanity at the time of the offense, evidence of the defendant's mental condition before or after the offense supports an inferential conclusion that the defendant was insane at the crucial moment. See United States v. Sims, 637 F.2d 625 (9th Cir.1980), and cases collected therein.
Second, everyone knew the date in defense counsel's careless question to Loeffler, "The incident took place on July 16. Could you render an opinion as to his mental state on July 16?" was, in fact, a mistake. The prosecutor, totally aware of the mistake, made no objection to the question or Loeffler's response. This failure to contemporaneously object, which so often does in a defendant on a strategic bypass theory, see, e.g., State v. Cumbie, 380 So.2d 1031 (Fla. 1980); Clark v. State, 363 So.2d 331 (Fla. 1978), should equally do in the State. The prosecutor's inaction was a waiver of objection to the relevancy and admissibility of Loeffler's testimony. However, well after Loeffler completed his testimony and with final arguments about to begin, the prosecutor, certain of the error in the date, moved to strike Loeffler's testimony as irrelevant.[1] Thereafter, the pertinent colloquy between defense counsel and the court went like this:
"THE COURT: He already stated the offense was on the 16th.
"[DEFENSE COUNSEL]: That was my question.
"THE COURT: I am sorry.
"[DEFENSE COUNSEL]: What I am saying, rather than to say  there is no question they are alleging the 19th. If there is a question in there saying the date of the offense, which is obviously the 19th, that should suffice.
"THE COURT: No, sir.
"[DEFENSE COUNSEL]: I have a standing objection of that untimeliness of Mr. Woodard's objection.
"THE COURT: It has nothing to do with the timeliness. The question at this point is whether it is a matter that should be  whether the testimony in and of itself should go to the jury based on the fact that it does not relate to the date charged.
"He did not object to this opinion. He now is moving to strike based upon the fact of the date of July 16th. Has no relationship to the date of the offense, which is July the 19th.
"It is a proper motion and the motion is granted."
... .
"[DEFENSE COUNSEL]: I would ask the Court to specifically instruct the jury *817 to disregard Doctor Loeffler's opinion as of the date of the offense and not his entire opinion.
"THE COURT: His opinion, sir, with the entire matter has to be stricken because his opinion was on July 16th.
"[DEFENSE COUNSEL]: What I am saying, strictly instruct the jury they are not to confuse it with striking Doctor Loeffler's entire testimony, his diagnosis and et cetera.
"THE COURT: I intend to advise this jury that the opinion given by Doctor Loeffler as to whether or not the defendant knew the difference between right and wrong and appreciated the wrongfulness of his acts is stricken, period. I am not going to go into anything else.
"I am saying his opinion is being stricken. They are to disregard it."
I am sure there are still some followers of the trial by ambush school who would look with admiration upon the prosecutor's belated and calculated move to eviscerate the defendant's bona fide insanity defense. However, it ill serves our system of justice for courts to place their imprimatur on this conduct.
SCHWARTZ, J., concurs in the opinions of both BASKIN and DANIEL S. PEARSON, JJ.
NOTES
[1] The crime was alleged to have occurred on July 19, 1979.
[2] Chatman reiterates that the burden of proving insanity is on the defendant because he is presumed sane under the law. When he rebuts the presumption of sanity by presenting evidence of insanity sufficient to raise a reasonable doubt, the burden shifts to the state to prove sanity beyond a reasonable doubt. Holmes v. State, 374 So.2d 944 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980); Parkin v. State, 238 So.2d 817 (Fla. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1189, 28 L.Ed.2d 322 (1971); Farrell v. State, 101 So.2d 130 (Fla. 1958); Greenfield v. State, 337 So.2d 1021 (Fla.2d DCA 1976).
[1] The record does not show whether Loeffler was still available to be recalled as a witness to correct the mistake in the date or any effort by defense counsel to reopen the testimony. The record does show, however, that defense counsel, presumably relying on the fact that Loeffler's testimony was already before the jury, allowed another defense psychiatrist to go ahead with long-standing foreign travel plans and excused him from giving testimony after the court refused to hear this witness late in the day before his intended departure.